UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOANNE T. GREENE ) | Case No. 10-10801 CAB |
| ) | *Chapter 7 Case* |
| Debtor. ) | |

JOINT STIPULATION OF FACTS
With Deposition Transcript References

NOW COMES Raymond J. Obuchowski, Esq., Chapter 7 Trustee for the Bankruptcy Estate of Joanne T. Greene, by and through his counsel, Obuchowski & Emens-Butler, P.C. and Joanne T. Greene, Chapter 7 Debtor , by and through her attorney, John D. Toscano, Esq., and stipulate as to the Facts as follows:

1. On June 13, 2010, Joanne T. Greene filed a petition for relief under Chapter 7, Title 11 of the United States Code.

2. As of the commencement of the case, Joanne T. Greene was residing at 144 Cold Brook Road, Wilmington, Vermont. . (transcript page 7 lines 1-4)

3. Raymond J. Obuchowski was appointed Interim Trustee, thereafter duly qualifying and is presently serving in such capacity.

4. As of the date of the filing, the Debtor filed her initial Petition Schedules and Statements pursuant to Bankruptcy Rule 1007. In the initial filings, the Debtor failed to schedule an interest in a Promissory Note in the principal amount of $65,000.00, as such Note was dated May 12, 2009. The Debtor did list income from real property on Schedule J, in the initial filings, in the monthly amount of $792.00, payable monthly under such Promissory Note.

5. In the initial filings, by the Debtor on June 13, 2010, there was no claim of exemption in Schedule C for any interest under the Promissory Note.

6. On July 1, 2010, following inquiry by the Trustee, the Debtor amended her Schedule A to include the Promissory Note of May, 2009 as having a current value of $76,060.80, as it related to an eight year, four percent per annum mortgage held in the Debtor's name on her Vermont homestead in Townsend, Vermont which as sold in May of 2009.

7. The Debtor amended her Schedule C on July 10, 2010 to include the interest in the Promissory Note asserting a claim of exemption under 27 V.S.A. §101 in the amount of $76,060.80, being the current value of the note's remaining payments.

8. The initial Meeting of Creditors was scheduled for July 12, 2010 at which time the Debtor appeared and was examined.

9. Following the examination of the Debtor on July 12, 2010, the Trustee concluded the Meeting of Creditors.

10. On July 15, 2010, the Debtor amended her Schedule B to include a paragraph #35 "The interest in proceeds of a promissory note from the sale of the Debtor's property in May of 2009" in the amount of $76,060.80.

11. On July 15, 2010, the Debtor amended her Schedule C, the property claimed as exempt, to include the interest in the proceeds of a promissory note under 27 V.S.A. §101 in the amount of $76,060.80.

12. On July 24, 2010, the Trustee filed an Objection to Debtor's claim of exemption in homestead under 27 V.S.A. §101, and a second objection on August 24, 2010, which objections were timely filed in accordance with Bankruptcy Rule 4003.

13. On August 3, 2010, the Debtor amended her Schedule C, the property claimed as exempt as it related to the interest in the Promissory Note asserting a basis for exemption under 27 V.S.A. §101 and 12 V.S.A. §3023 including decisional law as a basis under "In re: Oliver 182 B.R. 699 (Bkrtcy.D.Vt. 1995)" in the amount of $76,060.80.

14. For approximately 30 years prior to May, 2009, the Debtor resided at the property located on Route 30, West Townsend, Vermont.   (transcript page 9 lines 4-5)

15. In May of 2009, the Debtor sold her property in West Townsend, Vermont to Paul R. Stone and Kerry L. Stone for the negotiated sum of $75,000.00.  (Statement of Financial Affairs, paragraph 10a)

16. At the sale of the West Townsend property, the Debtor received a promissory note in the amount of $65,000.00, payable in monthly installments on the 12th of each month, commencing June 12, 2009, in the amount of $792.30, accruing interest at 4% over a term of 8 years. (transcript page 9 – 11)( Trustee Exhibits 1-3)

17. In the last week of May, 2009, the Debtor went to Florida and remained there through the first week of October, 2009 (transcript page 8, line 11-12)

18. When the Debtor went to Florida, she initially moved in with her daughter, Michelle A. Stern, and son-in-law, Derek N. Stern in their residence in Old Town, Florida. (transcript page 8, line 17-18)

19. Prior to the Debtor selling her West Townsend home in May of 2009, she traveled to visit her daughter in Florida a couple of times (transcript page 12, lines 14 through 17)

20. At the time Joanne Greene visited her daughter in Florida prior to the sale of the West Townsend home, her daughter was living in Largo, Florida.  (transcript page 12 lines 18-20)

21. The Debtor's daughter, Michelle Stern, indicated she would like to have her mother, Joanne Greene, down in Florida with her.  (transcript page 13, lines 1-3)

22. When Joanne Greene sold her West Townsend, Vermont property, she gave a portion of her furniture and other furnishings to her daughter, Michelle Stern and removed her remaining furniture and furnishings from the home to have with her while she was in Florida. (transcript page 13 lines 15-18)

23. In May of 2009, the Debtor's daughter, Michelle Stern and son-in-law, Derek N. Stern came to Vermont to assist the Debtor to pack her personal property and the property given to the Debtor's daughter to take it to Florida. (transcript page 21, lines 7-14)

24. When the Debtor traveled to Florida in the last week of May, 2009, she moved with all of her personal belongings, leaving no personal effects in Vermont. (page 13, lines 19-21)

25. The Debtor's daughter, Michelle A. Stern and son-in-law, Derek N. Stern, sold their property in Largo, Florida, on or about the same time as the Debtor sold her West Townsend, Vermont property. (transcript page 14, lines 1-6)

26. Initially, the Debtor's daughter, Michelle Stern and her son-in-law, Derek N. Stern, had contemplated acquiring a property in Lake City, Florida, which had two mobile homes on it one of which was a double-wide and the other a single-wide. (transcript page 18 lines 11-14)

27. That acquisition would not have required a mortgage payment on the second mobile home. home (transcript page 18, lines 9-17)

28. In March of 2009, prior to the sale of the Vermont property, the Debtor and her daughter and son-in-law had formed an agreement for the rental of new Florida property in which the Debtor would reside. (transcript page 18, lines 23-25; page 19, lines 1-2)

29. Debtor and her companion, William LaPointe signed a rental agreement for the Lake City property for $600.00 per month. (transcript page 18 lines 15-17) (Trustee Exhibit 4)

30. The timing of the Debtor's contemplation and review of the potential Lake City, Florida property arrangement was one month prior to the sale of her home in Vermont in May of 2009 (transcript page 18, lines 18-22)

31. The Debtor's son-in-law, Derek N. Stern, through the assistance of his father, Morton Stern, purchased a different property in Old Town, Florida in approximately June of 2009. (transcript page 17 lines 11-17)

32. When Joanne Greene and William LaPointe arrived in Florida, they moved into the mobile home occupied by the Debtor's daughter, Michelle Stern, and her son-in-law, Derek Stern, located at 309 NE 151st Avenue, Old Town, Florida. (transcript page 14 lines 24-25); (transcript page 15 lines 3-7);   (transcript page 22 lines 6-19)

33. Subsequent to Joanne Greene's arrival in Florida, she and her son-in-law, Derek N. Stern, acquired a second mobile home to be placed on the property located at 309 NE 151st Avenue, Old Town, Florida. (page 14-15, lines 5-20) which was to be occupied by the Debtor and William LaPointe. (transcript page 22, lines 20-25) (Trustee Exhibit 6)

34. The Debtor and her companion, William LaPointe, had considered living in the second mobile home on the Old Town property before its purchase, since the Lake City property was not acquired.  (page 16, lines 2-11) (transcript page 46-47)

35.  Under the new arrangement, the Debtor, Joanne Greene and her companion, William LaPointe, were to make the payment on the newly acquired second mobile home, and pay $600 rent to her daughter, Michelle Sterns, and son-in-law, Derek Sterns. (transcript page 16 lines 18-22) (Trustee Exhibit 5)

36. The property in Old Town, Florida, as owned by Derek Stern, was acquired by his father, Morton Stern, to whom the Sterns were to make payment for the real estate to Morton Stern.  (transcript page 16-17, lines 1-17)

37. It was the Debtor's understanding that Derek N. Stern, the Debtor's son-in-law, has a mental disability which results in his father handling all monies for his son.  (transcript page 17, lines 15-23)

38. The Debtor asserted that she agreed to accommodate her son-in-law to acquire the second mobile home because he could not afford it on his own. (transcript page 24 lines 22-25); (transcript page 25 lines 1-11)

39. The second mobile home, as purchased on June 4, 2009,  was delivered to the Old Town

property in July, 2009, though it was not fully ready to occupy until August 2009. (transcript page 24, lines 3-6); (transcript page 38 lines 15-18); (transcript page 39 lines 7-10)

40. Derek Stern paid $2,000.00 for a down payment and $733.14 for insurance for the second mobile home. (transcript page 24, lines 13-18) (Trustee Exhibit 7)

41. The Debtor provided to Derek Stern the $2,000.00 for a down payment and $733.14 for insurance for the second mobile home. (transcript page 24, lines 19 – 21)

42. Joanne Greene believed herself to be an accommodation party and not an owner under the contract. (transcript page 24 lines 22-25, page 25 lines 1-6)

43. When the Debtor arrived in Florida, she undertook steps to become a Florida resident, including acquiring a Florida's driver's license. (transcript page 25, lines 1-20)

44. Joanne Green believed that she was required to have some proof of Florida residency for the financing of the mobile home, due to her belief that her daughter and son-in-law had insufficient income to obtain such a loan. (transcript page 25, lines 12-20)

45. In July, 2009, the Debtor surrendered her Vermont driver's license to acquire her Florida driver's license. (transcript page 26, lines 13-16)

46. When the Debtor left Vermont in May, 2009, she owned a cargo van which was her personal vehicle and principal mode of transportation, (transcript page 26, lines 19-25), and she obtained a Florida vehicle registration in September, 2009, just prior to leaving Florida, although the Vermont registration did not expire until January, 2010, premised upon her belief that she was required to register the vehicle in Florida after residing in Florida for six (6) months (transcript page 33, lines 22-25; transcript page 34, lines 1-11)

47. The Debtor states she registered to vote in Florida, in part by virtue of her perception it was automatic when she applied for her driver's license. transcript (page 27, lines 18-24)

48. Joanne Greene applied for State benefits in Florida including food stamps and medical benefits. (transcript page 28, lines 11-23, transcript page 29, lines 6-10)

49. Joanne Greene was denied these benefits due to the Florida Department of Children and Families determination that her household income was to high. (transcript page 29, lines 10-15) (Trustee Exhibit 11)

50. The Debtor opened a bank account in Florida at Drummond Community Bank in June, 2009, which account remained opened until October 7, 2009. (transcript page 32, lines 2-24) (Trustee Exhibit 10)

51. The Debtor opened the account in order to negotiate her checks while she was in Florida (transcript page 32, lines 2-6)

52. The Debtor returned to Vermont in the first half of October 2009, obtained her Vermont driver's license and took up residence with her son in Wilmington, Vermont.

DATED at Royalton, Vermont: Tuesday, February 22, 2011.

                        BANKRUPTCY ESTATE OF
                        JOANNE T. GREENE

By:   /s/ Raymond J. Obuchowski
       Raymond J. Obuchowski, Esq.
       Counsel to Chapter 7 Trustee
       Obuchowski & Emens-Butler
       PO Box 60, Bethel, VT 05032
       (802) 234-6244
       ray@oeblaw.com


DATED at Bennington, Vermont: Tuesday, February 22, 2011.

                        JOANNE T. GREENE

By:   /s/ John D. Toscano
       John D. Toscano, Esq.
       Counsel to Chapter 7 Debtor
       236 Union St. #3
       Bennington, VT 05201
       (802) 688-3808
       jdtlaw1@comcast.net