*Formatted for Electronic Distribution*                                                  *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
June 20, 2011

_____

**In re:**
    **Joanne T. Greene,**                                        **Chapter 7 Case**
          **Debtor.**                                              **# 10-10801**

_____

*Appearances:*    Jennifer Emens-Butler, Esq.    John D. Toscano, Esq.
                   Raymond J. Obuchowski, Esq.    Bennington, Vermont
                   Bethel, Vermont                      for the Debtor
                   for the Chapter 7 Trustee

**MEMORANDUM OF DECISION**
**GRANTING THE DEBTOR'S MOTION FOR SUMMARY JUDGMENT,**
**DENYING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, AND**
**OVERRULING THE TRUSTEE'S OBJECTION TO THE DEBTOR'S CLAIM OF EXEMPTION**

The Trustee and the Debtor have filed cross-motions for summary judgment on the issue of whether, pursuant to 27 V.S.A. § 101 and 12 V.S.A. § 3023, the Debtor is entitled to claim a homestead exemption in her interest in the funds she is collecting under a promissory note that the Debtor received in consideration of her conveyance of her Vermont homestead property. For the reasons set forth below, the Court finds that the Debtor is entitled to claim the exemption.

**JURISDICTION**

This Court has jurisdiction over this contested matter and these motions for summary judgment pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

**PROCEDURAL HISTORY**

On June 13, 2010, Joanne T. Greene (the "Debtor") filed a petition for relief under Chapter 7 of Title 11 of the United States Code (doc. # 1). Raymond J. Obuchowski (the "Trustee") was appointed interim trustee. In the initial filings, the Debtor did not schedule an interest in a promissory note dated May 12, 2009 (the "Promissory Note"), as an asset or an exemption, although she did list income from real property in the monthly amount of $792.00 on Schedule I (doc. # 1). On July 1, 2010, the Debtor amended her Schedule A to include the Promissory Note, with a current value of $76,060.80, and to describe the Debtor's Vermont homestead in Townsend, Vermont, sold in 2009 (the "Vermont

1

Homestead Property"), and an eight-year, four-percent-per-annum mortgage held in the Debtor's name on the Vermont Homestead Property (doc. # 11). On the same date, the Debtor filed an amended Schedule C to claim an exemption in the amount of $76,060.80, in the Promissory Note, under 27 V.S.A. §101 (doc. # 11). On July 15, 2010, the Debtor filed an amended Schedule B to include an "[i]nterest in proceeds of a promissory note from the sale of debtor's homestead in May 2009, and interest as legal title holder under Vermont law in mortgaged premises," and the Debtor valued that interest at $76,060.80 (doc. # 14, ¶ 35). On the same date, the Debtor filed an amended Schedule C, and again included the interest in the proceeds of the Promissory Note under 27 V.S.A. § 101 in the amount of $76,060.80 (doc. # 14). On July 24, 2010, the Trusted filed an objection to Debtor's claim of exemption (doc. # 15). On August 3, 2010, the Debtor amended her Schedule C to include a reference, for the first time, to 12 V.S.A. § 3023, as well as to this Court's decision, In re Oliver, 182 B.R. 699 (Bankr. D. Vt. 1995) (Conrad, J.) (doc. # 16). On August 5, 2010, the Trustee filed a second objection to the Debtor's claim of exemption to respond to the Debtor's reliance upon Oliver (doc. # 17). The Debtor filed a response to the Trustee's objection on August 30, 2011 (doc. ## 20, 21, 22). The parties subsequently filed a joint stipulation of facts (the "JSOF") (doc. # 37) and cross-motions for summary judgment (doc. ## 43, 44). The Debtor later filed a reply brief (doc. # 49).[1]

## UNDISPUTED MATERIAL FACTS

Based upon the parties' JSOF and the record in this case, the Court finds the following facts to be undisputed and material:

1. For approximately 30 years prior to May 2009, the Debtor resided at the Vermont Homestead Property (JSOF ¶ 14).
2. In May 2009, the Debtor sold the Vermont Homestead Property to Paul R. Stone and Kerry L. Stone for the negotiated sum of $75,000.00 (JSOF ¶ 15).
3. At the sale of the Vermont Homestead Property, the Debtor received a promissory note in the amount of $65,000.00, accruing interest at 4% over a term of 8 years, payable in monthly installments in the amount of $792.30 on the 12th of each month, commencing June 12, 2009 (JSOF ¶ 16).
4. In May 2009, when the Debtor sold the Vermont Homestead Property, she gave a portion of her furniture and other furnishings to her daughter and removed her remaining furniture and furnishings from the home to have with her, leaving no personal effects in Vermont (JSOF ¶¶ 22,

---

[1] On April 4, 2011, the Susan C. and Morton D. Stern Trust filed a letter in opposition to the Debtor's motion for summary judgment (doc. # 50). The Court relies upon the JSOF filed by the parties, and therefore does not give any weight to the letter.

2

24), and moved to Florida, initially to reside with her daughter and son-in-law in a mobile home on property in Old Town, Florida (the "Old Town Property") (JSOF ¶ 32).

5. Thereafter, in June 2009, the Debtor and her son-in-law acquired a second mobile home to be placed on the Old Town Property, which was to be occupied by the Debtor and William LaPointe (JSOF ¶ 33).

6. The Debtor provided to her son-in-law $2,700.00 towards the down payment and to pay the $733.14 insurance bill for the second mobile home (JSOF ¶¶ 40, 41, Debtor Dep. 24:7-21; Dep. Ex. # 7).

7. The Debtor and William LaPointe were to make the payment on the newly acquired second mobile home and to pay $600 rent to her daughter and son-in-law (JSOF ¶ 35).

8. When the Debtor arrived in Florida, she undertook steps to become a Florida resident, including acquiring a Florida driver's license (JSOF ¶ 43).

9. The Debtor opened a bank account in Florida in June 2009 in order to negotiate her checks while she was in Florida; the account remained opened until October 2009 (JSOF ¶¶ 50, 51).

10. In July 2009, the Debtor surrendered her Vermont driver's license to acquire her Florida driver's license because she believed that she was required to have some proof of Florida residency for the financing of the mobile home, and she believed she would need to assist in the financing since she thought her daughter and son-in-law had insufficient income to obtain such a loan on their own (JSOF ¶¶ 44, 45).

11. The Debtor obtained a Florida vehicle registration for her van in September 2009, just prior to leaving Florida, although the Vermont registration did not expire until January 2010, premised upon her belief that she was required to register the vehicle in Florida after residing in Florida for six months (JSOF ¶ 46).

12. The Debtor stated that she registered to vote in Florida, in part by virtue of her perception that it was automatic when she applied for her driver's license (JSOF ¶ 47).

13. The Debtor applied for state benefits in Florida, including food stamps and medical benefits; the Florida Department of Children and Families determined that her household income was too high and denied her applications in July and September 2009 (JSOF ¶¶ 48, 49; Dep. Ex. # 11).

14. The Debtor returned to Vermont in the first half of October 2009, obtained a Vermont driver's license, and took up residence with her son in Wilmington, Vermont (JSOF ¶ 52).

15. The Debtor has not purchased a residence in Vermont since she left Florida, and owned no real property on the date she filed the petition (Debtor's original and amended schedules, doc. ## 1, 11, 12, 14, and 16).

3

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006). If the nonmoving party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex Corp., 477 U.S. at 323–25 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"); see also Tufariello v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

The above standard applies even where the parties have filed cross-motions for summary judgment, and the Court must consider each motion independently. WorldCom, Inc. v. Gen. Elec. Global Asset Mgmt Servs. (In re WorldCom, Inc.), 339 B.R. 56, 62 (S.D.N.Y. 2006) ("Where, as here, a party has filed a cross-motion for summary judgment, the Court must pay particular attention to the parties' respective burdens of proof, persuasion and production. When faced with a cross-motion for summary judgment, the Court must consider the merits of each motion independently of each other."). The Court must examine each motion "on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

4

## DISCUSSION

The Court finds that there are no material facts in dispute and thus turns to the merits of the parties' arguments to determine if either party is entitled to judgment as a matter of law.

### THE PARTIES' ARGUMENTS AND THE LEGAL ISSUE PRESENTED

The Trustee objects to the Debtor's exemption, arguing that the Debtor abandoned her right to a homestead exemption when she sold the Vermont Homestead Property, and asserts that she had no intent to keep the homestead or to return to it at the time she sold it. As additional support for this abandonment theory, the Trustee points to the steps the Debtor took toward establishing residency, and a possible new homestead, in Florida, which he asserts compel the conclusion that the Debtor relinquished the protection of the applicable Vermont exemption statutes (doc. ## 15, 17, 44).

The Debtor's position is that she never abandoned her Vermont homestead, and is therefore entitled to claim the homestead exemption in the proceeds of its sale in this bankruptcy case. She insists that there are reasonable explanations for the steps she took toward establishing Florida residency, she always intended to return to Vermont if her move to Florida proved unsuccessful, and, in that event, she could regain her former homestead, through a foreclosure action, if the obligors on the Promissory Note were to default (doc. ## 20, 22, 43). Alternatively, the Debtor argues that her move to and return from Florida, and her intent and motivations with respect to these moves, are irrelevant because the proceeds from the sale of her homestead property are exempt under the pertinent statutes and case law (doc. ## 20, 22, 43). Additionally, the Debtor's schedules show that, on the date she filed her bankruptcy petition, she owned no real property and the funds she is collecting under the Promissory Note arose directly from her sale of the Vermont Homestead Property.

### THE CONTROLLING STATUTES AND JURISPRUDENTIAL GUIDEPOSTS

This contested matter turns on two Vermont statutes: one that defines the Vermont homestead exemption and one that specifies the circumstances under which property is exempt from trustee process. These statutes, 27 V.S.A. § 101 and 12 V.S.A. § 2032, provide as follows:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000 in value, and owned and used or kept by such person as a homestead, together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101 (2011);

> Except as herein otherwise provided, a person shall not be liable on trustee process on account of a sum due or owing to the principal debtor for property sold or conveyed or delivered by him, which was exempt from attachment and execution at the time of the sale. If at the time the trustee process was commenced, the principal

5

> debtor was the owner of other property exempt from attachment and execution and of the same kind as that sold by him to the trustee, so far as such other property was free from encumbrance for the purchase money, the provisions of this section shall not apply.

12 V.S.A. § 3023 (2011). Of significant import is the fact that neither statute mentions the proceeds of a homestead.

Reviewed in the context of these statutes, the instant facts present a case of first impression in Vermont and a novel question of law. While there are dozens of cases from other states dealing with the exemption of proceeds from the sale of homestead property, all of those cases consider proceeds that are delivered in a single payment at the time of sale. The parties have not cited, and the Court has not found, a single case that addresses the standard to be applied to a proposed exemption of proceeds from the sale of homestead property in the form of a stream of payments. Additionally, there does not appear to be any case law addressing the applicability of the homestead exemption to proceeds when a person sells her homestead property in state A, thereafter buys an interest in homestead property in state B, then returns to state A at a time when she still has a continuing interest in the proceeds of the homestead property in state A and no longer has a homestead interest in state B or in any other property.

Therefore, the Court must establish the standard for determining whether sale proceeds paid in the form of a stream of payments are exempt that adheres to the principles set out in the Vermont homestead exemption statutes, is consistent with other applicable jurisprudence, and implements state and federal exemption policy. In doing so, the Court proceeds with caution and will grant the Debtor an exemption in homestead proceeds only if exemption policy, Vermont jurisprudence, and bankruptcy case law in this District unequivocally support that outcome.

<u>POLICY CONSIDERATIONS UNDERLYING ALLOWANCE OF HOMESTEAD EXEMPTIONS IN VERMONT</u>

This Court has addressed the allowance of Vermont homestead exemptions in the context of many different fact patterns. <u>See</u>, <u>e.g.</u>, <u>In re Detko</u>, 290 B.R. at 499–500 (Bankr. D. Vt. 2003) (collecting cases). While the instant case presents unique facts and circumstances, Vermont law is clear that any analysis of an individual's right to a homestead exemption must begin with the recognition that there is a strong policy basis for construing exemptions generously in favor of debtors:

> 'In Vermont, as in most (if not all) jurisdictions, exemption statutes are considered to be remedial in nature and thus ought to receive a liberal construction in favor of debtors.' <u>Delaney v. Obuchowski (In re Delaney)</u>, 268 B.R. 57 (D. Vt. 2001) (citing <u>Parrotte v. Sensenich (In re Parrotte)</u>, 22 F.3d 472, 474 (2d Cir. 1994); <u>In re Rule</u>, 38 B.R. 37, 41 (Bankr. D. Vt. 1983); <u>In re McQueen</u>, 21 B.R. 736, 738 (Bankr. D. Vt. 1982)); <u>Jewett v. Guyer</u>, 38 Vt. 209 (1865) ("The homestead exemption has been repeatedly recognized in this court [the Vermont Supreme Court] as being humane in

6

> its character, and the statute should receive a liberal construction in view of the objects aimed at by it."). The purpose of Vermont's homestead exemption is 'to preserve a home for the family; to protect the family as a unit whether it consists of a husband and wife or any other natural person.' In re Evans, 51 B.R. 47, 50 (Bankr. D. Vt. 1985) (citing In re D'Avignon, 34 B.R. 790, 793 (Bankr. D. Vt. 1981), aff'd, 34 B.R. 796, 800 (D. Vt. 1982)).

Detko, 290 B.R. at 499.

Application of this policy requires a balancing of the intent of the policy and import of pertinent case law, against the particular language of the subject statutes and facts underlying the Debtor's claim for this exemption. The factors that tip the scale against giving significant weight to these policy considerations are, first, that the statute is silent with regard to proceeds, and, second, that the Debtor is not seeking to preserve a home for the family or to protect the family as a unit, but rather to preserve a stream of income to cover a senior adult's daily living expenses. Tipping the scale in the other direction, and giving deference to this policy, are old Vermont cases that categorically permit the exemption of proceeds from trustee process, see Hastie, 57 Vt. 293, 1884 WL 6640, 1884 Vt. LEXIS 35 (Vt. 1884); Locke, 45 A. 226, 71 Vt. 343 (Vt. 1899, and two recent bankruptcy cases, concluding that the proceeds from the sale of a homestead may be exempt under the Vermont homestead exemption statute, see Oliver, 182 B.R. at 700-01 (noting that a Vermont debtor could have exempted proceeds from the conveyance of her Connecticut homestead under both 27 V.S.A. § 101 and 12 V.S.A. § 3023 had the transaction taken place in Vermont and finding that "a debtor in Vermont may use 12 V.S.A. § 3023 to exempt proceeds of the sale of property in another state which was exempt under the laws of that state at the time of sale, if that property would also have been exempt in Vermont"); Detko, 290 B.R. at 502 (citing Oliver and concluding that a Vermont debtor may exempt the proceeds from her Vermont homestead property upon a potential sale). This jurisprudence persuades the Court to analyze the question presentenced from a starting point that construes the exemption law in favor of the Debtor.

<u>UNDER CASE LAW FROM THE BANKRUPTCY COURT FOR THE DISTRICT OF VERMONT
EXEMPTION RIGHTS ARE DETERMINED AS OF THE PETITION DATE</u>

The date of the filing of the petition for relief determines the right of a debtor to claim a homestead exemption. Evans, 51 B.R. at 50; In re White, 18 B.R. 95, 96 (Bankr. D. Vt. 1982). Where a debtor owns real property, the Court must inquire as to whether the debtor both owned and occupied the property on the date of the petition.[2] However, such inquiries are inapposite when the debtor is seeking to

---

[2] Occupancy may be actual or constructive, and the Court will review exigent circumstances when issue of abandonment arises. See In re Brent, 68 B.R. 893, 895–97 (Bankr. D. Vt. 1987) (noting the occupancy requirement and holding that the debtor's mistaken belief that court order forbid his occupancy of homestead was not enough to show abandonment in face of abiding intention to return); Detko, 290 B.R. at 500–02 (finding that the debtor did not abandon her homestead in light of exigent

7

exempt cash proceeds from the sale of a homestead property. When a debtor is seeking to exempt proceeds of a homestead property, there can be no question of ownership or occupancy of the homestead property as of the date of the petition, because by definition the property has been liquidated. The Court therefore turns to germane case law to guide it in establishing the salient factors for assessment of a proceeds exemption claim under the homestead exemption statute.

### CASE LAW, IN BOTH STATE COURT AND THIS FEDERAL COURT, HOLDS THAT THE PROCEEDS OF A HOMESTEAD ARE EXEMPT, WITHOUT LIMITATION

Whether homestead proceeds are exempt turns on state law, and the law varies from state to state. "The proceeds of a voluntary sale of a homestead may be absolutely exempt, exempt if reinvested in another homestead, or exempt for a designated period." 40 C.J.S. Homesteads § 38 (2011); see also 9A AM. JUR 2D Bankruptcy § 1458 (2011). The exempt status of the proceeds of a voluntary sale of the homestead depends upon the language of the applicable exemption statutes, and here the Debtor chose to claim exemption under Vermont state law. Although the Vermont courts have not addressed this question in the context of a bankruptcy filing, they have addressed it in the context of vulnerability of funds to trustee process. Vermont law on this issue is straightforward and absolutely clear.

In construing the pertinent Vermont statutes, the Court finds guidance in decisions from both the state court and this Court. In Oliver, the debtor, a new Vermont resident, claimed a right to a homestead exemption, under 27 V.S.A. § 101 and 12 V.S.A. § 3023, in the proceeds of a promissory note and mortgage where a divorce decree awarded the debtor's ex-spouse the homestead located in Connecticut and left her holding a promissory note and mortgage on her former homestead. Oliver 182 B.R. at 699–700. The Court found that the debtor could claim the proceeds exempt under both statutes. Id. at 700. As to 27 V.S.A. § 101, the Court stated that, prior to the divorce, the debtor would have been able to claim a homestead interest in the property. Id. Following the divorce and the execution of the promissory note, the debtor's interest was still protected under Vermont law by virtue of the 12 V.S.A. § 3023 "because [the promissory note and mortgage] represent the proceeds of a conveyance of exempt property." Id. The homestead was exempt under Connecticut law at the time of the conveyance, and the Court considered the "language of 12 V.S.A. § 3023 [to be] plain and unambiguous" to dictate a finding that the debtor had a right to claim an exemption in the proceeds of such a conveyance. Id. The Court concluded, "Vermont's legislature intended that its citizens should be able to exempt [up to the maximum amount of the current statutory homestead exemption] in value of their homesteads, 27 V.S.A. § 101, as well as their right to receive the proceeds from the sale of that homestead. 12 V.S.A. § 3023." Id.

---

factors such as concerns for personal safety, which forced the debtor to move from the homestead to which she always intended to return).

8

Therefore, this Court concludes that the proceeds from the sale of a homestead are exempt under the Vermont homestead exemption statute, to the same extent that the Vermont real property homestead would be, subject to any restrictions state law imposes.

The Oliver Court set forth no restrictions regarding the Debtor's exemption of proceeds of the conveyance of exempt homestead property. This is consistent with Vermont Supreme Court decisions examining the early versions of 12 V.S.A. § 3023. In Locke, the defendant conveyed his homestead in exchange for a note, and subsequently vacated the premises. Locke v. Post, 45 A. 226, 71 Vt. 343 (Vt. 1899). The Locke court rejected the plaintiff's arguments that, because the defendant did not either establish a new homestead or use the proceeds from the sale of the former homestead to buy another, the proceeds from the note were subject to attachment. Id. at 226. The court held:

> It was not necessary for the defendant to continue a housekeeper after he had sold his homestead, in order to exempt the notes from attachment by trustee process; nor was it necessary that he should keep the notes with an intention of using them in buying another homestead; nor was it necessary that he should have had such intention at the time the trustee process was served. The statute does not require the proceeds to be kept under the same conditions that an unoccupied homestead is kept, in order to exempt them from trustee process. . . . [b]y this section, the exemption is no way dependent upon the debtor's continuing to be a housekeeper, nor upon his intention to acquire another homestead, nor upon the intent with which he keeps the proceeds. The liability of the trustee is made to depend upon whether the property was at the time of sale exempt from attachment and levy upon execution.

Id. Similarly, in Hastie, the Vermont Supreme Court held that a trustee was not chargeable on the proceeds of an annuity granted in exchange for the defendant's conveyance of exempt property. Hastie v. Kelley, 57 Vt. 293, 295, 1884 WL 6640, at *2, 1884 Vt. LEXIS 35, **3–4 (Vt. 1884). The court noted:

> We do not think the fact that [defendant] went to New Hampshire to live after this transaction should vary the rule applicable to the case; or that we should presume on that account that he had other exempt property in New Hampshire of the same kind as that conveyed by him to [trustee]. The report leaves but little ground for such inference or presumption, if indeed ever proper.

Id. at 296, 1884 WL 6640, at *3, 1884 Vt. LEXIS, at **5.

The Oliver, Locke, and Hastie cases all declare that the proceeds from the conveyance of exempt property are themselves exempt, regardless of whether the conveyance was voluntary or involuntary.

Some states have temporal requirements that limit the time period during which homestead proceeds are exempt. See COLO. REV. STAT. § 38-41-207 (2007) (identifying proceeds from the sale of the homestead as exempt for a period of two years); TEX. PROP. CODE ANN. § 41.001(c) (proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale)

9

(2001). Some states limit the proceeds exemption to funds that are slated to be applied to another homestead property. See OR. REV. STAT. § 18.395(2) (sale proceeds exempt for a period not exceeding one year if held with the intention to procure another homestead therewith) (2009); WIS. STAT. § 815.20 (2007) (identifying proceeds from the sale of the homestead as exempt for two years if held with the intention to procure another homestead with the proceeds). Some states prohibit a debtor from exempting surplus proceeds if the debtor acquires a new homestead property. See Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So.2d 201, 206 (Fla. 1962) (interpreting the state's homestead exemption provision, which was silent on proceeds, as extending to proceeds, but "only so much of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt . . . [a]ny surplus over and above that amount should be treated as general assets of the debtor").

Vermont has no such restrictions set out in either its homestead statute or case law. Therefore, this Court finds that under Vermont law, the proceeds of a debtor's homestead property may be claimed as exempt, without durational or reinvestment restrictions.[3]

### ARTICULATION OF STANDARD FOR ASSESSING RIGHT TO EXEMPTION

Taking into account the intent of the statute, Vermont case law prohibiting trustee process against homestead proceeds, and the critical role of the petition filing date, the Court establishes the following two-part test to determine whether a debtor may exempt the proceeds from the sale of property under the Vermont homestead statute: 1) whether the funds the debtor seeks to exempt are proceeds derived from the sale of an exempt homestead property; and 2) whether the debtor held no ownership interest in any homestead property, other than the proceeds, on the petition date.

Here, the answer to both inquiries is yes. On the date of the bankruptcy filing, the Debtor owned no homestead property and did not claim a homestead exemption in any property other than the proceeds from the sale of her Vermont residence. There is no dispute that the Vermont residence qualified as her homestead on the date the Debtor sold it, or that the proceeds in question were solely derived from the sale of that homestead property. The fact that the Debtor may have owned and occupied property in Florida after she sold her Vermont residence, and before she filed her bankruptcy petition, is of no legal

---

[3] The record suggests that the Debtor intends to use the proceeds in question to fund her regular monthly living expenses; however, the Court need not make any findings on the question of how the Promissory Note payments will be used. Locke explicitly, and Oliver implicitly, instructs that there are no durational or reinvestment requirements regarding the proceeds whereby they may lose their exempt character solely due to the passage of time or the nature of their subsequent use. Some state exemption statutes explicitly address durational or reinvestment requirements and, if the statutes are silent, some courts may infer such requirements based upon good faith or reasonableness. See In re Blair, 125 B.R. 303, 304–05 (Bankr. D.N.M. 1991) (collecting statutes and cases, deciding to "not allow an exemption in proceeds from a voluntary sale of a homestead when the statutes do not specifically so provide," and sustaining an objection to the debtors' claim of homestead exemption in proceeds of a voluntary sale); see also In re Kujan, 286 B.R. 216, 223–24 (Bankr. D. Conn. 2002); In re Murdock, 2008 WL 728879, *3–4, 2008 Bankr. LEXIS 808, *8–12 (Bankr. N.D.N.Y. March 17, 2008). However, in light of Locke, Hastie, and Oliver, as well as the guidance from the Vermont Supreme Court to read the exemption liberally in favor of debtors, the Court declines to read any requirements into the statutes at issue because they are silent on the matter.

significance because the controlling date for determining a debtor's right to exemptions is the date of the bankruptcy filing, and on that date the Debtor owned no other homestead property. Likewise, the fact that the Debtor's right to collect proceeds under the Promissory Note began before, and continued during, the Debtor's ownership of a Florida homestead, does not alter the character of the proceeds as being unequivocally and solely proceeds of her Vermont homestead property both on the date of sale and the date of her bankruptcy filing. Lastly, the length of time that has elapsed since the sale of the Vermont Homestead Property is irrelevant because Vermont has not attached any temporal restrictions to the prohibition of collection of homestead proceeds with respect to protection from trustee process and bankruptcy court case law directs all homestead analysis to the facts as they exist as of bankruptcy filing date.

In sum, in scrutinizing the Debtor's eligibility to claim this exemption, the Court focuses its inquiry on the source of the proceeds and the status of the Debtor's homestead ownership interests on the date of the petition. Here, the Trustee never disputed, and the Court finds, that the Vermont Homestead Property was exempt as the Debtor's homestead at the time she sold the Vermont Homestead Property and received the Promissory Note, and that the Debtor held no ownership interest in any homestead property, other than the proceeds, on the date of the bankruptcy filing. Accordingly, the Debtor has met the two-prong test this Court deems appropriate to apply to the facts and issue presented in this disputed matter.

### THE TRUSTEE'S ABANDONMENT ARGUMENTS ARE INAPPOSITE TO PROCEEDS

The Trustee argues that the Debtor's steps towards establishing residency clearly indicate she attempted to establish a new homestead in Florida and, in so doing, the Debtor extinguished any homestead interest in the Promissory Note proceeds and any protections afforded by 12 V.S.A. § 3023. He asserts that to exempt the proceeds, the Debtor had the burden of showing that she did not establish Florida homestead and always intended to return to Vermont. If this were the proper test, it would be a very close call, and the Court would weigh the voluntary nature of the Debtor's sale of her homestead, her move to Florida, and the surrounding exigencies. However, that analysis, and indeed the two-part test of whether the Debtor owned and occupied the homestead property, applies only to real property, and is inapplicable when a debtor seeks to exempt cash under the homestead exemption.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor may claim the proceeds of the homestead property as exempt, pursuant to 27 V.S.A. § 101. Therefore, the Court denies the Trustee's

11

motion for summary judgment, grants the Debtor's motion for summary judgment, and overrules the Trustee's objection to the Debtor's claim of an exemption in the Promissory Note.

This memorandum of decision constitutes the Court's findings of facts and conclusions of law.

Dated: June 20, 2011  
Burlington, Vermont

/s/ Colleen A. Brown  
Colleen A. Brown  
United States Bankruptcy Judge